R. Bruce Rich (RR-0313)
Benjamin E. Marks (BM-0796)
Jonathan Bloom (JB-7966)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Attorneys for Plaintiffs Barclays Capital Inc.,
Merrill Lynch, Pierce, Fenner & Smith Incorporated,
and Morgan Stanley & Co. Incorporated

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
Barclays Capital Inc., Merrill Lynch, Pierce,  :
Fenner & Smith Incorporated, and Morgan        :
Stanley & Co. Incorporated,                    :    06 Civ. 4908 (DLC)
                                               :
                          Plaintiffs,          :
                                               :
        v.                                     :
                                               :
Theflyonthewall.com, Inc.,                     :
                                               :
                          Defendant.           :
-------------------------------------------------------------x

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO STAY OR MODIFY INJUNCTION PENDING APPEAL

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| ARGUMENT | | 2 |
| I. | FLY HAS FAILED TO SHOW A LIKELIHOOD OF SUCCESS ON APPEAL | 3 |
| II. | FLY HAS MADE NO SHOWING IT WILL SUFFER IRREPARABLE HARM ABSENT A STAY | 5 |
| III. | PLAINTIFFS WOULD BE IRREPARABLY HARMED BY A STAY | 7 |
| IV. | THE PUBLIC INTEREST IS BEST SERVED BY DENIAL OF A STAY | 8 |
| CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

In re Adelphia Commc'ns Corp.,
    361 B.R. 337 (S.D.N.Y. 2007) .................................................................................. 5

Associated Press v. All Headline News Corp.,
    Case No. 08 Civ. 323 (PKC), 2009 WL 382690 (S.D.N.Y. Feb. 17, 2009) .................. 9

Carvel Corp. v. Eisenberg,
    Case No. 87 Civ. 608 (CSH), 1988 U.S. Dist. LEXIS 12043 (S.D.N.Y. Oct. 31,
    1988) ..................................................................................................................... 3, 7

Federal Ins. Co. v. County of Westchester,
    921 F. Supp. 1136 (S.D.N.Y. 1996) ....................................................................... 10

Halliburton Energy Servs. v. NL Indus.,
    Case No. H-05-4160, 2008 U.S. Dist. LEXIS 54263 (S.D. Tex. July 16,
    2008) ..................................................................................................................... 10

International News Serv. v. Associated Press,
    248 U.S. 215 (1918) ......................................................................................... 4, 6, 9

Miss Am. Org. v. Mattel, Inc.,
    Case No. 91 Civ. 2154 (LBS), 1991 U.S. Dist. LEXIS 6158 (S.D.N.Y. May 3,
    1991) ......................................................................................................................... 3

Mohammed v. Reno,
    309 F.3d 95 (2d Cir. 2002) ....................................................................................... 5

National Basketball Ass'n v. Motorola, Inc.,
    105 F.3d 841 (2d Cir. 1997) ............................................................................ passim

New York State Restaurant Ass'n v. New York City Bd. of Health,
    545 F. Supp. 2d 363 (S.D.N.Y. 2008) ...................................................................... 4

North Am. Airlines, Inc. v. International Bhd. of Teamsters, AFL-CIO,
    Case No. 04 Civ. 9949 (KMK), 2005 U.S. Dist. LEXIS 6819 (S.D.N.Y. Apr. 19,
    2005) ......................................................................................................................... 4

Optimum Shipping & Trading v. Prestige Marine Servs. Pte.,
    613 F. Supp. 2d 502 (S.D.N.Y. 2009) ...................................................................... 2

Schwartz v. Dolan,
 159 F.R.D. 380 (N.D.N.Y. 1995).................................................................................8

Silverstein v. Penguin Putnam, Inc.,
 Case No. 01 Civ. 309 (JFK), 2003 U.S. Dist. LEXIS 9901 (S.D.N.Y. June 12,
 2003) ..........................................................................................................................5, 8

Wainwright Sec., Inc. v. Wall St. Transcript Corp.,
 558 F.2d 91 (2d Cir. 1977)..........................................................................................4, 6

In re World Trade Center Disaster Site Litig.,
 503 F.3d 167 (2d Cir. 2007) ........................................................................................2

**STATE CASES**

Bond Buyer v. Dealers Digest Publ'g Co.,
 25 A.D.2d 158, 267 N.Y.S.2d 944 (1st Dep't 1966) ...................................................4, 9

Lynch, Jones & Ryan, Inc. v. Standard & Poor's,
 Case No. 117064/97, 1998 N.Y. Misc. LEXIS 334 (N.Y. Sup. Ct. June 15,
 1998) ...........................................................................................................................9

**REPORTS**

H. Rep. No. 94-1476, reprinted in 1976 U.S.C.C.A.N. 5659, 5747 ................................. 8-9

H. Rep. No. 101-514, reprinted in 1990 U.S.C.C.A.N. 6915, 6931 ...................................8

Plaintiffs Barclays Capital Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Morgan Stanley & Co. Incorporated (collectively, "Plaintiffs") submit this memorandum of law in opposition to the motion filed by Defendant Theflyonthewall.com, Inc. ("Fly") on April 13, 2010, to stay or modify pending appeal the injunction issued by the Court on March 18, 2010.

## PRELIMINARY STATEMENT

Fly's application for a stay or modification of the injunction is woefully inadequate and should be denied. Tellingly, Fly does not even attempt to demonstrate a likelihood of success on appeal. Indeed, Fly does not identify a single respect in which the Court's ruling, although notable for being a rare adjudication of the "hot news" misappropriation doctrine, represents anything other than a straightforward application of settled law to the record evidence. Instead, Fly attempts to satisfy the heavy burden it bears on this motion by rehashing arguments rejected by the Court (i) at the summary judgment phase, (ii) in denying Fly's motion for judgment on partial findings, and (iii) at trial. An application for a stay is not a proper forum for rearguing the merits.

Nor does Fly establish, as it must, irreparable injury absent a stay. The only new evidence Fly offers in support of its application is a pair of emails cancelling subscriptions with reference to the restrictions imposed by the Court on Fly's use of Plaintiffs' equity research. From these two emails, both of which were several weeks old when Fly filed its motion, Fly predicts the certain demise of its business during the appellate process absent a stay. But for a service with thousands of subscribers, this evidentiary showing falls far short of demonstrating that Fly's business cannot survive unless the Court stays or modifies the injunction. Fly may suffer some economic loss

pending resolution of its appeal, but reduced subscription revenue is not tantamount to irreparable harm.

In sum, Fly provides no basis for a stay or modification of the injunction pending appeal, which would subject Plaintiffs to continued harm from conduct the Court correctly held to be unlawful. Accordingly, the Court should deny Fly's motion.

## ARGUMENT

Under Rule 62(c), Fed.R.Civ.P., the Court is required to consider four factors in evaluating a motion to stay or modify an injunction pending appeal: "(1) whether the stay applicant has made a *strong* showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." In re World Trade Center Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007) (citation and internal quotation marks omitted) (emphasis added). Such motions are not routinely granted. To the contrary, "[a]lthough the weighing of these factors is flexible and within the Court's discretion, the movant's burden of establishing a favorable balance of these factors is a heavy one and more commonly stay requests will be denied." Optimum Shipping & Trading v. Prestige Marine Servs. Pte., 613 F. Supp. 2d 502, 503 (S.D.N.Y. 2009) (citation and internal quotation marks omitted). For the reasons explained below, Fly has not met its heavy burden on any of these factors.

## I. FLY HAS FAILED TO SHOW A LIKELIHOOD OF SUCCESS ON APPEAL

Fly acknowledges that it faces a "formidable burden" to persuade the Court that it is likely to prevail on appeal, see Def. Mem. 7, but it attempts to dodge this requirement. Instead of identifying any legal error in the Court's ruling, Fly argues that the case presents "complex issues on the merits," id., such as whether the parties are "in 'head-to-head' direct competition" and whether Plaintiffs "made the necessary evidentiary showing of a substantial threat to their incentive to continue in the business." Id. at 2. These are not legal questions but, rather, challenges to the Court's findings of fact. As such, neither presents the type of unsettled legal issue that otherwise might justify a stay pending appeal.

Courts have issued stays pending appeal in cases that involve "a 'difficult legal question' . . . where 'the equities of the case clearly favor the maintenance of the status quo.'" Miss Am. Org. v. Mattel, Inc., No. 91 Civ. 2154 (LBS), 1991 U.S. Dist. LEXIS 6158, at *2 (S.D.N.Y. May 3, 1991) (quoting Carvel Corp. v. Eisenberg, No. 87 Civ. 608 (CSH), 1988 U.S. Dist. LEXIS 12043, *5 (S.D.N.Y. Oct. 31, 1988)). But there are "no legal questions of extreme difficulty . . . [where the relevant legal doctrine] is well established." Id. at *3.[1] The legal standard governing "hot news" misappropriation in the Second Circuit was announced more than a decade ago in National Basketball Ass'n v. Motorola, Inc., 105 F.3d 841 (2d Cir. 1997), and it remains settled law. Fly may disagree with controlling Second Circuit precedent, but Fly does not, and cannot, argue

---

[1] Nor do the equities of the case favor a stay. See infra Points II-IV.

that the viability of "hot news" misappropriation is an open question (nor did it so argue at trial).

The questions Fly does raise involve the application of the Motorola standard to largely undisputed facts, and the Court decided those questions adversely to Fly based on a thorough assessment of the record evidence. Fly's belief that the Court erred in rejecting its arguments does not make the issues "difficult," nor is it grounds for finding a likelihood of success on appeal. See North Am. Airlines, Inc. v. International Bhd. of Teamsters, AFL-CIO, No. 04-CV-9949 (KMK), 2005 U.S. Dist. LEXIS 6819, at *5 (S.D.N.Y. Apr. 19, 2005) ("Mere repetition of arguments previously considered and rejected cannot be characterized as a 'strong showing' of likelihood of success on the merits.") (citation omitted).

To the extent Fly invokes the First Amendment as justification for the stay, see Def. Mem. 2-4, this effort has no more merit than its contention on summary judgment and at trial that the First Amendment provides a defense to Plaintiffs' misappropriation claims. The inapplicability of that defense to a "hot news" claim was settled by the Supreme Court nearly a century ago in International News Service v. Associated Press, 248 U.S. 215, 240-41 (1918) ("INS"); see also Wainwright Sec., Inc. v. Wall St. Transcript Corp., 558 F.2d 91, 96-97 (2d Cir. 1977) (rejecting First Amendment defense to infringement of equity research reports); Bond Buyer v. Dealers Digest Publ'g Co., 25 A.D.2d 158, 267 N.Y.S.2d 944 (1st Dep't 1966) (enjoining misappropriation of information on bond offerings by news sheet publisher). In New York State Restaurant Ass'n v. New York City Bd. of Health, 545 F. Supp. 2d 363, 366 (S.D.N.Y. 2008), the court denied an application for a stay pending appeal where it found that "the First

Amendment implications are not novel and the regulation falls comfortably within existing precedent." The same is true here with respect to the Court's "hot news" ruling.

## II. FLY HAS MADE NO SHOWING IT WILL SUFFER IRREPARABLE HARM ABSENT A STAY

The weakness of Fly's showing of a likelihood of success on appeal obligates it to make an especially strong showing of irreparable harm to justify a stay. See Mohammed v. Reno, 309 F.3d 95, 101 (2d Cir. 2002) ("The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[] will suffer absent the stay. . . . [M]ore of one excuses less of the other.") (citation omitted). Irreparable harm "must be neither remote nor speculative, but actual and imminent," In re Adelphia Commc'ns Corp., 361 B.R. 337, 347 (S.D.N.Y. 2007), and mere economic loss is not irreparable harm. See Silverstein v. Penguin Putnam, Inc., No. 01 Civ. 309 (JFK), 2003 U.S. Dist. LEXIS 9901, at *5 (S.D.N.Y. June 12, 2003) (stating that lost book sales are not irreparable harm). Fly's attempted showing fails by any measure.

Fly contends it will suffer irreparable harm in two respects, neither of which warrants a stay or modification of the injunction: (1) a purported deprivation of First Amendment rights and (2) a threat to the survival of its business by virtue of being placed at a competitive disadvantage by the injunction. See Def. Mem. 3-4. Fly's asserted First Amendment "harm" is merely a rehash of its failed First Amendment defense, which, as previously discussed, Supreme Court precedent forecloses. See supra Point I. There is no First Amendment right to engage in "hot news" misappropriation – even of information that can be characterized as being in the "public domain." Compare

Def. Mem. 3 with INS, 248 U.S. at 240-41 (rejecting contention that "the news is abandoned to the public for all purposes when published"). As shown above, Fly fails to identify a "difficult legal question" regarding the "hot news" standard or a likelihood that the Second Circuit will determine that the Court clearly erred in making factual determinations under the elements of the Motorola standard.

Moreover, as Fly itself emphasizes, the Court specifically addressed First Amendment concerns by framing the injunction with an exception for contextual, non-systematic news reporting after the market opens. See Def. Mem. 3; cf. Wainwright Sec., 558 F.2d at 96-97 (distinguishing "legitimate coverage of a news event" from simply appropriating the financial analyses and predictions contained in equity research). The Court's sensitivity to legitimate news reporting further undermines Fly's assertion of First Amendment harm from the injunction. Fly's request, in the alternative, for modification of the injunction is nothing more than an effort to relitigate the Court's careful accommodation of appropriate relief against Fly's free riding, on the one hand, and legitimate news reporting, on the other. Fly provides no grounds for revisiting this aspect of the ruling.

As for competitive harm, Fly asserts that "substantial adverse financial consequences to Defendant's business . . . are certain to become significant as time progresses." Def. Mem. 5. But the sole basis for this statement, and for the suggestion that Fly might be "'put out of business' during the appeal process," Def. Mem. 2, is two emails from customers, one of whom had only been a customer for "a couple of days," cancelling individual subscriptions. Id. at 4. Moreover, Fly fails to establish any nexus between these two cancellations and the purported competitive harm of which it

complains, offering no evidence that either subscriber turned to one of Fly's competitors to obtain unauthorized access to Plaintiffs' equity research recommendations before 10:00 a.m. or within two hours of a mid-day release.[2]

Fly provides no financial data to support its speculative claim that the injunction jeopardizes the survival of Fly's business. Beyond Mr. Etergino's bare assertion, see Etergino Decl. ¶ 7, there is no basis for finding that Fly faces the prospect of "financial ruin" that persuaded the court in Carvel to issue a stay. See Carvel, 1988 U.S. Dist. LEXIS 12043, at *3. In fact, as the Court knows from Mr. Etergino's testimony at trial, Fly has thousands of subscribers and numerous distribution partners; Fly's newsfeed is just one aspect of its service; and Plaintiffs are just three of dozens of firms whose equity research recommendations Fly posts. Fly's inability to demonstrate anything close to irreparable harm is fatal to its stay request.

### III. PLAINTIFFS WOULD BE IRREPARABLY HARMED BY A STAY

Fly attempts to dismiss the irreparable harm Plaintiffs would suffer from Fly's return to misappropriating their equity research recommendations, asserting that others engage in similar conduct. See Def. Mem. 5 & n.5. The Court has heard and properly rejected this argument on multiple occasions: at the summary judgment stage; in denying Fly's motion for judgment on partial findings; and (on the basis of an ample

---

[2] Fly's claim of competitive harm rests in part on its contention that Plaintiffs "have taken no meaningful action to restrain Defendant's competitors." Def. Mem. 5. To the extent this statement is meant to suggest that Plaintiffs have taken no such action since the Court issued its ruling (notwithstanding that the Court did not order Plaintiffs to take any particular action, or achieve any particular results, *immediately*), that suggestion is inaccurate. Plaintiffs stand ready to provide the Court with evidence to that effect should the Court deem it appropriate.

evidentiary record of harm) at trial. Fly's continued disagreement with the Court's conclusion does not provide a basis for a stay. See, e.g., Schwartz v. Dolan, 159 F.R.D. 380, 384 (N.D.N.Y. 1995) ("To argue that because the defendant disagrees with the court's conclusion, a continuation of this unlawful conduct will cause only minimal harm to the intended beneficiaries is untenable.") (citation omitted); Silverstein, 2003 U.S. Dist. LEXIS 9901, at *5 (finding, in copyright infringement case, that "the status quo has been and will continue to be harmful to plaintiff and should cease"). Moreover, the injunction will likely discourage other entities from engaging in similar conduct and will assist Plaintiffs in pursuing those who do – thereby reducing both the irreparable harm to Plaintiffs and any purported competitive disadvantage to Fly.

## IV. THE PUBLIC INTEREST IS BEST SERVED BY DENIAL OF A STAY

The public interest will not be served by a stay or modification of the injunction. Fly's claim that "issues of federal preemption are implicated by the injunction," Def. Mem. 6, does not alter the analysis. This contention, and Fly's related suggestion that this case addresses the "question of whether the hot-news doctrine as articulated by the Supreme Court in 1918 has any place in the modern law," Id. at 7 n.4, are meritless.

Whether New York law provides a remedy for "hot news" misappropriation has been definitively answered and reaffirmed repeatedly by Congress, the Second Circuit, and other courts. Congress expressly preserved state-law remedies for "hot news" misappropriation when it enacted the Copyright Act of 1976 and reaffirmed its intent to continue to preserve such state-law remedies in 1990. See H. Rep. No. 101-514, at 21, reprinted in 1990 U.S.C.C.A.N. 6915, 6931 (1990); H. Rep.. No. 94-

1476, at 132, reprinted in 1976 U.S.C.C.A.N. 5659, 5747 (1976) (footnote omitted). The Second Circuit explained in Motorola that claims that meet the five-factor test articulated therein are not preempted. 105 F.3d at 852. There simply is no open question as to whether the "hot news" doctrine has "a place in the modern law." See, e.g., Associated Press v. All Headline News Corp., No. 08 Civ. 323 (PKC), 2009 WL 382690, at *5 (S.D.N.Y. Feb. 17, 2009) (quoting Motorola); Bond Buyer v. Dealers Digest Publ'g Co., Inc., 25 A.D.2d 158, 267 N.Y.S.2d 944 (1st Dep't 1966); Lynch, Jones & Ryan, Inc. v. Standard & Poor's and The McGraw-Hill Cos., Inc., No. 117064/97, P.C. No. 13165, 1998 N.Y. Misc. LEXIS 334 (N.Y. Sup. Ct. June 15, 1998). Fly is not entitled to a stay of the injunction on the ground that it disagrees with the policy judgments made by the Supreme Court in INS and by Congress and other courts in affirming the continuing vitality of the "hot news" misappropriation doctrine.

Although Fly fails to identify any harm to the public interest flowing from the injunction (or why any such harm is not more than adequately addressed by the exception for legitimate news reporting), the trial record does reflect that the public interest would be threatened if the Court were to grant a stay. As Fly conceded at trial, there is a public interest in the production of equity research. See Tr. 588:9-18. Each of Plaintiffs' witnesses testified as to the reduced production of equity research that has resulted from Fly's conduct and the likelihood of further reductions if that conduct were permitted to continue. See, e.g., Hurewitz Test. Aff. ¶¶ 35-36, 40-42; Lynch Test. Aff. ¶¶ 44-56; Linde Test. Aff. ¶¶ 41-45; Browning Test. Aff. ¶¶ 9-13, 15, 21. Fly blithely asserts that Plaintiffs would not be harmed by resumption of Fly's systematic stripmining of their equity research recommendations before 10:00 a.m. or within two hours

of a mid-day release, but Fly offers no explanation of how the public interest would be served by the continued decline in the production of equity research that likely would result from a stay or modification of the injunction pending appeal.

## CONCLUSION

For the reasons set forth above, Fly has fallen far short of making the requisite showing for a stay or modification of the injunction. Its motion should, accordingly, be denied.[3]

Dated: New York, New York
April 20, 2010

By: /s/ Benjamin Marks
R. Bruce Rich (RR-0313)
Benjamin E. Marks (BM-0796)
Jonathan Bloom (JB-7966)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
(212) 310-8000

Attorneys for Plaintiffs Barclays Capital Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Morgan Stanley & Co. Incorporated

---

[3] Because Fly has failed to establish its entitlement to a stay or modification of the injunction, the Court need not reach the question of whether the bond requirement should be waived. See, e.g., Federal Ins. Co. v. County of Westchester, 921 F. Supp. 1136, 1139 (S.D.N.Y. 1996). In any event, Fly has not made an adequate showing that the bond requirement should be waived. See, e,.g., Halliburton Energy Servs. v. NL Indus., No. H-05-4160, 2008 U.S. Dist. LEXIS 54263, at **9-10 (S.D. Tex. July 16, 2008) (declining to waive bond requirement where, inter alia, the applicant had not presented sufficient evidence of liabilities, debts, or encumbrances that might limit its ability to post bond).