```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
BARCLAYS CAPITAL INC., MERRILL LYNCH,    :
PIERCE, FENNER & SMITH INCORPORATED,     :     06 Civ. 4908 (DLC)
and MORGAN STANLEY & CO. INCORPORATED,   :
                                         :
                    Plaintiffs,          :     OPINION & ORDER
                                         :
              -v-                        :
                                         :
THEFLYONTHEWALL.COM,                     :
                                         :
                    Defendant.           :
                                         :
---------------------------------------- X
```

DENISE COTE, District Judge:

The Court previously held that plaintiffs Barclays Capital Inc. ("Barclays Capital") and Morgan Stanley & Co. Incorporated ("Morgan Stanley") are entitled under 17 U.S.C. § 505 to receive a reasonable attorney's fee from defendant Theflyonthewall.com ("Fly"). This Opinion establishes the final fee amount, $200,000, and sets forth the reasons for that determination.

BACKGROUND

The facts and procedural history of this litigation are described at length in the Court's Opinion and Order of March 18, 2010. Barclays Capital Inc. v. Theflyonthewall.com, __ F. Supp. 2d __, 2010 WL 1005160 (S.D.N.Y. Mar. 18, 2010) (the "March 18 Opinion"). The facts most relevant to this Opinion are restated briefly below.

Barclays Capital and Morgan Stanley (collectively, the "Copyright Plaintiffs") are each major financial institutions that, inter alia, produce research reports about publicly traded equity securities.  These research reports frequently include recommendations about whether investors should buy, sell, or hold a given stock or other security.  Id. at *2.  The defendant, Fly, is a New Jersey corporation that, since 1998, has been in the business of collecting and publishing financial news and rumors on its subscription-based online newsfeed, www.theflyonthewall.com.  Id. at *9.

Between February 14 and March 2, 2005, Fly published at least seventeen stories on its newsfeed that contained "direct, verbatim copying of key excerpts from [the Copyright Plaintiffs'] research reports."  Id. at *14.  Eight of the copied reports were produced by Morgan Stanley, and nine were produced by Lehman Brothers Inc. ("Lehman Brothers"), the predecessor-in-interest of Barclays Capital.  After discovering these acts of infringement, Morgan Stanley and Lehman Brothers sent Fly a cease-and-desist letter in April 2005.  Fly thereafter stopped its wholesale copying of the Copyright Plaintiffs' research reports, but continued to publish the reports' key recommendations in paraphrased form.  Id. at *13.

In June 2006, Barclays Capital, Morgan Stanley, and a third firm -- Merrill Lynch, Pierce, Fenner & Smith Incorporated

2

("Merrill Lynch") -- brought this lawsuit alleging claims of copyright infringement and hot-news misappropriation. Fly disputed liability on the copyright claims for over three years. Among its various defenses, Fly asserted fair use, and litigated that defense in both affirmative and defensive summary judgment briefing. In September 2009, while the cross-motions for summary judgment were pending, the Copyright Plaintiffs decided to limit their requested relief on the copyright claims to the minimum statutory damages of $750 per infringed report plus attorney's fees.[1]  Id. at *15.  In late January 2010, roughly six weeks before trial, Fly conceded liability for copyright infringement. A bench trial was then held to determine Fly's liability for hot-news misappropriation.

Following trial, the March 18 Opinion held that Fly was liable for misappropriation. The plaintiffs were awarded injunctive relief on the misappropriation claim, and the Copyright Plaintiffs were awarded an aggregated statutory

---

[1] "Attorneys' fees are available to prevailing parties under § 505 of the Copyright Act but are not automatic." Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc., 290 F.3d 98, 117 (2d Cir. 2002). "When determining whether to award attorneys fees, district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010); see also Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 & n.19 (1994). "The third factor -- objective unreasonableness -- should be given substantial weight." Bryant, 603 F.3d at 144.

damages award of $12,750 plus prejudgment interest on the copyright infringement claims.  Id.  With respect to attorney's fees, the March 18 Opinion decided that Fly's litigation position with respect to the copyright claims was "objectively unreasonable" in light of existing precedent.[2]  Id. at *16.  The March 18 Opinion thereby determined that the Copyright Plaintiffs were entitled to a "reasonable attorney's fee" under 17 U.S.C. § 505.  An Order accompanying the March 18 Opinion set a schedule for the Copyright Plaintiffs and Fly to make submissions concerning the proper methodology for calculating the attorney's fee award.

By Order of March 29, 2010 (the "March 29 Order"), the Court set out the methodology to govern that calculation.  The March 29 Order determined, inter alia, that: (1) 100% of Copyright Plaintiffs' counsel's time entries relating solely to the copyright claims, including research on the fair-use defense, would be included; (2) none of the time entries that did not relate to the copyright claims would be included wherever such non-copyright work could be readily identified and

---

[2] In particular, in Wainwright Securities, Inc. v. Wall Street Transcript Corp., 558 F.2d 91 (2d Cir. 1977), the Second Circuit explicitly rejected a fair-use defense to verbatim copying of copyrighted equity research reports.  See id. at 95-97.  The March 18 Opinion also observed that Fly's filing of a copyright infringement lawsuit against a rival newsfeed publisher in 2007 -- for copying that was far less extensive than that done by Fly itself -- belied any assertion of good faith by Fly.

4

segregated; (3) 33.3% of the time entries relating to both copyright infringement and misappropriation would be included; and (4) none of the time entries relating to settlement of the litigation would be included. The March 29 Order was supplemented by an Order dated April 1, 2010 (the "April 1 Order"), which established a cut-off date of January 22, 2010 for all time entries and which clarified that 100% of time spent researching the fair use defense would be included, while 33.3% of time relating to both fair use and hot-news misappropriation would be included.

The Copyright Plaintiffs filed their original fee application on April 9, 2010, seeking attorney's fees totaling $394,146.57. After conferring with Fly, the Copyright Plaintiffs submitted a revised fee application on April 30. In their revised application, the Copyright Plaintiffs request an award of attorney's fees in the amount of $361,280.74.[3] On May

---

[3] The Copyright Plaintiffs reduced their original fee request in four ways. First, the Copyright Plaintiffs conceded that "certain time entries included in the Initial Fee Request did not relate to the copyright infringement claims." Second, the Copyright Plaintiffs discounted certain time entries from February 2005 through February 2006 because Copyright Plaintiffs' counsel also represented other clients during that period with respect to potential copyright claims against Fly. Third, the Copyright Plaintiffs agreed to exclude certain other entries that they "have agreed are not compensable." Finally, the Copyright Plaintiffs imposed a 50% reduction to all travel time entries, as is customary. See Robinson v. City of N.Y., No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *6 (S.D.N.Y. Sept.

14, Fly filed its opposition to the Copyright Plaintiffs' application, and on May 21, the Copyright Plaintiffs filed a reply.

## DISCUSSION

To determine the amount of a prevailing party's fee award under 17 U.S.C. § 505, a court first calculates the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 111 (2d Cir. 2007), amended on other grounds, 522 F.3d 182 (2d Cir. 2008) ("Arbor Hill").  The focus of the courts is on setting "a reasonable hourly rate, taking account of all case-specific variables."  Id. at 117; see also Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (emphasis omitted).[4]

---

29, 2009) ("[C]ourts in this Circuit regularly reduce attorney's fees by 50% for travel time." (citation omitted)).

[4] Among the factors that Arbor Hill counsels the district court to consider are:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . . , the timing demands of the case, whether the attorney had an interest . . . in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting pro bono . . . , and other returns (such as reputation, etc.) the attorney expected from the representation.

Arbor Hill, 493 F.3d at 112.  The Second Circuit has also counseled district court to consider the twelve "Johnson

6

"The presumptively reasonable fee boils down to 'what a reasonable paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'"  Simmons, 575 F.3d at 174 (quoting Arbor Hill, 493 F.3d at 112, 118).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  Hensley, 461 U.S. at 437.  "Applications for award of fees must be documented by time records," and such records should be "contemporaneously created" and should "specify, for each attorney, the date, the hours expended, and the nature of the work done."  Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009)(citation omitted).  "[C]ounsel . . . [are] not required to record in great detail how each minute of [their] time was expended," but "counsel should identify the general subject matter of [their] time expenditures."  Hensley v. Eckerhart, 461 U.S. 424, 437 n.12 (1983).  The Copyright Plaintiffs have supported their application with contemporaneous time records, organized by attorney and then by date, which describe generally the tasks performed and the number of hours expended in tenth-of-an-hour increments.

---

factors" enumerated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).  See Arbor Hill, 493 F.3d at 114 n.3 (listing the twelve factors).

I.   Hourly Rate

Fly does not object to the hourly billing rates requested by the Copyright Plaintiffs for each of the eight attorneys who worked on this litigation between 2005 and 2010.  According to the Copyright Plaintiffs, the rates employed in their fee application "reflect the standard, hourly rates that are generally charged to fee-paying clients . . . subject to negotiated discounts," and are "based on the amounts actually billed to the Copyright Plaintiffs."

Having reviewed the Copyright Plaintiffs' fee application, the Court agrees that the hourly rates appear reasonable.  See Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc., 246 F.3d 142, 151 (2d Cir. 2001) ("The actual billing arrangement [used] certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded.").  Among other things, it appears that the law firm representing the Copyright Plaintiffs organized its staffing of the litigation to minimize duplicative work and inefficiencies.  The work was concentrated in the hands of three attorneys: a partner, a senior counsel, and a mid-level associate.  The other attorneys worked only a fraction of the time spent by the three principal attorneys.  Thus, the "reasonable hourly rate[s]" used for calculating the fee award are those rates included in the Copyright Plaintiffs' fee application.  Arbor Hill, 493 F.3d at 114.

II.  Fly's Objections

Fly contends that full remuneration would be unreasonable for many of the time entries in Copyright Plaintiffs' fee application.  In particular, Fly asserts that many of the time entries include: (1) work that does not "directly and predominately relate to the copyright infringement claims in this action"; (2) work relating to settlement discussions; (3) work that is described in vague terms or set forth in block-billed format; and/or (4) work that is excessive, redundant, or otherwise unnecessary.  Fly concludes that, once the appropriate corrections are made, the calculation of the presumptively reasonable fee should be $158,820.45.[5]

In considering Fly's objections, an exacting, entry-by-entry review need not be conducted.  "When the case involves attorneys' fees, important considerations favor judicial economy, and the need for more elaborate procedures is often diminished because the court has had the opportunity to observe, and assess the value of, much of the attorneys' contributions." Rein v. Socialist People's Libyan Arab Jamahiriya, 568 F.3d 345, 354 (2d Cir. 2009); see also Hensley, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation.").  Insofar as Fly has enumerated several categories

---

[5] Fly requests that this amount be further reduced by 50% in the Court's equitable discretion, for a final award of $79,410.23.

9

of objections and identified specific examples of time entries within each category, however, those categories will be addressed in turn below.

1.  Work That Does Not Directly and Predominately Relate to the Copyright Claims

First, Fly asserts that -- notwithstanding the guidance of the March 18 Opinion and the March 29 Order -- the Copyright Plaintiffs' fee application includes certain work that does not "directly and predominately" relate to the Copyright Plaintiffs' prosecution of their copyright infringement claim.  In particular, Fly contends that every time entry "directed to document review and other discovery activities" should be excluded, as should most entries relating to the depositions of Fly's employees, because those types of entries reflect work "primarily, if not entirely, directed to the misappropriation claims."  Therefore, Fly requests reductions in the following amounts: $13,876.83 for work related to defendant's document production; $37,656.41 for work related to plaintiffs' document production; $21,551.77 for work related to depositions of four Fly employees; $3,280.71 for third-party discovery; $774.23 for researching the sources of Fly's news stories; and $1,367.80 for researching the "timing" of Fly's publication of reports.

Fly's objections are without merit.  Each of the subcategories identified above was made relevant to the

copyright claims by Fly's assertion of a fair-use defense, which necessitated discovery into the "purpose and character" of Fly's use of the reports and the "effect of [Fly's] use upon the potential market for or value of the [Copyright Plaintiffs' reports]."  17 U.S.C. § 107; see Blanch v. Koons, 467 F.3d 244 (2d Cir. 2006) (discussing the four fair-use factors).  Indeed, with respect to Fly's challenges to the time entries for third-party discovery and the four employee depositions, Fly itself indicated that the third-party and employee witnesses had knowledge of "financial news reporting in general," an issue of potential relevance to Fly's fair-use defense.

Although Fly apparently contends that these time entries should be excluded because the entries did not explicitly state that they related to "fair use," the two Orders issued to guide the parties in litigating this attorney's fee dispute did not require such a showing.  Instead, where work related "solely" to the copyright claims, 100% of the time could be included in the calculation, and where it "relate[d] to both copyright infringement and misappropriation," only 33.3% of the time could be included.  See March 29 & April 1 Orders.  With respect to the entries at issue here, the Copyright Plaintiffs may properly seek one-third of their fees for the identified time.

### 2. Work Relating to Settlement

Second, Fly contends that the Copyright Plaintiffs improperly seek payment totaling $4,195.22 for certain time entries relating to the parties' attempts to settle the litigation. Most of the time entries identified by Fly are from 2005, before the complaint was filed. In reply, the Copyright Plaintiffs argue these time entries "relate not to settlement but to an informal discovery and fact-finding process by which the Plaintiffs sought to learn more about Fly's practices and Fly sought to persuade Plaintiffs its conduct was not unlawful."

The March 29 Order provided that "[n]one of the time addressed to settlement of the litigation . . . shall be included in the calculation." Given that the challenged time entries relate, in large part, to attempts at informal dispute resolution and persuasion among the parties, the Court exercises its discretion to exclude these time entries. As such, the Copyright Plaintiffs' fee application shall be reduced by $4,195.22.

### 3. Vague or Block-Billed Entries

Next, Fly contends that many of the time entries are unreasonably vague or impermissibly block-billed. Fly requests a reduction of at least $25,210.63 for the allegedly vague

12

entries and a reduction of at least $5,690.40 for the block-billed entries.

Courts may reduce the number of hours in a fee application where the time entries submitted by counsel are too vague to sufficiently document the hours claimed. Kirsch v. Fleet St., Ltd., 148 F.3d 149, 172-73 (2d Cir. 1998). Courts may also make reductions for "block-billing," that is, the practice of "aggregating multiple tasks into one billing entry." Adorno v. Port Auth. of N.Y. & N.J., 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010) (citation omitted). Nevertheless, "[w]hile 'block-billing' is disfavored and may lack the specificity required for an award of attorneys' fees, it is not prohibited as long as the Court can determine the reasonableness of the work performed." Id. (citation omitted).

With few exceptions, the time entries that Fly has challenged are not so vague as to frustrate review for reasonableness. Similarly, although block-billing appears regularly throughout the time entries, in almost every instance the reasonableness of the work performed can still be confirmed. For instance, it would be unreasonable to expect a detailed description for a snippet of time related to an email or a telephone call. Similarly, a file review conducted over many hours by a junior associate does not require a more detailed description of the precise files reviewed. Having examined the

specific entries which Fly has challenged as vague or block-billed, and having reviewed these entries in the context of the billing records that surround them, Fly's challenges to the reasonableness of the fees on these two grounds is denied.

4.  Excessive, Redundant, or Unnecessary Work

Finally, Fly contends that certain time entries are "excessive, redundant, or otherwise unnecessary."  First, Fly argues that all of the Copyright Plaintiffs' discovery-related time entries should be discounted on excessiveness grounds.  Fly observes that, during the eleven-month discovery period, the Copyright Plaintiffs billed 301.4 hours for three senior-level attorneys and 473.2 hours for five junior-level attorneys.  Fly surmises that "[t]he number of attorneys working on discovery, particularly in view of the vagueness of the entries, suggests that some significant portion of the work was redundant, excessive and unreasonable."  Fly seeks a 50% reduction in the fee award, or $74,946.16, for discovery-related entries.

Second, Fly contends that the time entries directed to preparing, drafting, and filing the complaint are excessive. Fly observes that three senior attorneys billed a collective 101.2 hours on these tasks, while one junior attorney billed 74.9 hours, for a grand total of 176.1 hours or $91,630.00 (of which $30,512.79 is requested).  Fly seeks a 50% reduction, or

14

$15,256.40, to account for these excessive complaint-related entries.

Third, Fly objects to the amount of time that counsel spent researching and preparing summary judgment materials.  The Copyright Plaintiffs' total expenditures on summary judgment were $442,041.41, including almost 900 hours of work by five attorneys.[6]  Fly seeks a 50% reduction, or $73,599.89, for these summary judgment-related entries.

"In determining what fee is reasonable, the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" Bliven, 579 F.3d at 213 (quoting Hensley, 461 U.S. at 434).  "[H]ours that were not reasonably expended" should be excluded from the fee award.  Hensley, 461 U.S. at 434 (citation omitted).  In determining whether the claimed hours were reasonably expended, "the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Bliven, 579 F.3d at 213 (citation omitted); see also Murphy v. Lynn, 118 F.3d 938, 952 (2d Cir. 1997) ("[T]he assessment of what adjustments to th[e] [attorney's fee] figure are warranted to account for . . . unnecessary or unproductive

---

[6] This calculation, undertaken by Fly, is not disputed by the Copyright Plaintiffs.

services, are committed to the sound discretion of the district court."); N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983) ("[I]n assessing the extent of staffing and background research appropriate for a given case, a district court must be accorded ample discretion"). "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992). The district court may make an across-the-board cut in the fee award if it concludes that the claimed hours are excessive. See Kirsch, 148 F.3d at 173; Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997) ("[A] district court can exclude excessive and unreasonable hours . . . by making an across-the-board reduction in the amount of hours.").

Fly's objections have merit, but only to a limited extent. Insofar as the Copyright Plaintiffs incurred more expense than was necessary in this litigation, that result is primarily the product of Fly's decision to vigorously contest its liability for copyright infringement, including by seeking summary judgment in its own favor. The Court also notes that the majority of the challenged time entries have already been heavily discounted per the terms of the March 29 Order, which discounted by two-thirds all time entries relating to both

16

misappropriation and copyright infringement.  Moreover, the Copyright Plaintiffs have not requested any fees for clerk or paralegal time.  Nevertheless, the Court agrees that a reduction of 20% -- or $29,439.96 -- is warranted on excessiveness grounds for the summary judgment time entries.  Thus, after incorporating all of the foregoing modifications, the "presumptively reasonable fee" for the Copyright Plaintiffs' award of attorney's fees is reduced to $327,645.56.

### III. Equitable Reduction

In addition to the objections described and addressed above, Fly requests an equitable reduction of the fee award in light of "the parties' economic disparity and the Defendant's current financial condition."  In support of this request, Fly has submitted declarations from Ron Etergino, its president, and Anthony F. DeLucia, a certified public accountant.  These declarations reveal that, as of April 30, 2010, Fly had less than $300,000 in cash on hand and outstanding liabilities of approximately $45,000.  The declarations also show that Fly requires "approximately $200,000 on a monthly basis" to stay in business and earns approximately that same amount in monthly gross revenue.  Fly contends that, owing to the financial disparity between itself and the Copyright Plaintiffs, the

17

"presumptively reasonable fee" should be further reduced by at least half.

Fly is correct that, even after the "presumptively reasonable fee" is established, the final fee award may be adjusted downward based on the relative financial strength of the parties. "[F]ee awards are at bottom an equitable matter, and courts should not hesitate to take the relative wealth of the parties into account." Toliver v. County of Sullivan, 957 F.2d 47, 49 (2d Cir. 1992) (applying 42 U.S.C. § 1988) (citation omitted); see also Nature's Enters. v. Pearson, No. 08 Civ. 8549 (JGK) (THK), 2010 WL 447377, at *11 (S.D.N.Y. Feb. 9, 2010) (Copyright Act) (collecting cases); Harrell v. Van der Plas, No. 08 Civ. 8252 (GEL), 2009 WL 3756327, at *2 (S.D.N.Y. Nov. 9, 2009) (Copyright Act) (insufficient evidence of financial disparities); Shangold v. Walt Disney Co., No. 03 Civ. 9522 (WHP), 2006 WL 2884925, at *1 (S.D.N.Y. Oct. 11, 2006) (reducing fee award due to parties' financial condition), aff'd, 75 F. App'x 72 (2d Cir. 2008).

The Copyright Plaintiffs contend that, notwithstanding the financial disparity between themselves and Fly, no equitable reduction is warranted. The Copyright Plaintiffs observe in their reply that Fly has spent over $700,000 to compensate its own counsel during this litigation, a fact reported by Fly in its opposition. The Copyright Plaintiffs also object to Fly's

reliance on certain internal financial documents that Fly refused to disclose during discovery.  Finally, the Copyright Plaintiffs argue that their voluntary decision to limit their relief to statutory minimum damages "further militates against any reduction in their requested fee award."

The Copyright Plaintiffs' arguments have some force.  Nevertheless, the economic disparities between Fly and the Copyright Plaintiffs are considerable, and given Fly's relatively modest operations, a full attorney's fee award is not required to fulfill the Copyright Act's purpose of deterring further infringement.  See Fogerty, 510 U.S. at 534 n.19 (noting that Copyright Act attorney's fee awards should "advance considerations of compensation and deterrence" (citation omitted)).  The Court concludes that an equitable reduction of the final fee award to $200,000 should be made in this case.  This amount -- which approximates one month of gross revenues or one month of operating expenses for Fly's business -- is sufficiently large to compensate the Copyright Plaintiffs and to deter Fly from future infringement, while also avoiding any risk that Fly would be "subject[ed] . . . to financial ruin."  Faraci v. Hickey-Freeman Co., Inc., 607 F.2d 1025, 1029 (2d Cir. 1979) (applying 42 U.S.C. § 2000e-5(k)); see also Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir. 1986) ("[T]he aims of

the [Copyright Act] are compensation and deterrence where appropriate, but not ruination.").

## CONCLUSION

The "reasonable attorney's fee" to be awarded the Copyright Plaintiffs under 17 U.S.C. § 505 is $200,000. The Copyright Plaintiffs may allocate this award among themselves as they see fit.

SO ORDERED:

Dated:   New York, New York
         June 30, 2010

```
             _____
                    DENISE COTE
             United States District Judge
```